1999 OK CIV APP 87

**Gregory MONTGOMERY, Petitioner,**

v.

**UNI–STEEL, Zurich American Insurance Co., and Workers' Compensation Court, Respondents.**

No. 92,596.

Court of Civil Appeals of Oklahoma, Division No. 2.

June 29, 1999.

Cathlyn J. Mills, Tara A. Inhofe, Mills Law Office, Tulsa, Oklahoma, For Petitioner.

Andrew D. Downing, Michael W. McGivern, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, Oklahoma, For Respondents.

REIF, J.

¶1 Claimant Gregory Montgomery seeks review of the workers' compensation trial court order that ruled he "sustained 0 percent permanent partial disability to the BODY AS A WHOLE due to injury to the THORACIC SPINE." Claimant Montgomery argues that this ruling resulted from the trial court applying an erroneous standard for compensating permanent partial disability. Claimant contends that the erroneous standard appears in the paragraph in the order that immediately precedes the zero percent permanent partial disability determination. The paragraph that immediately precedes the permanent partial disability determination states, in pertinent part, that " 'the goal of the Workers' Compensation Act is to compensate persons for loss of earning power occasioned by injuries to the body that disable them from performing labor' [and considering] that before this work related injury [Claimant] was earning $8.50 per hour

[and] after[ward] he earned $8.75 per hour.... Claimant has suffered no loss of earning power as the result of this work related injury and ... is not entitled to any compensation under the Workers' Compensation Act." Claimant asserts that disability is compensable on the basis of the degree of functional or anatomical abnormality or loss, and not loss of earning power. We agree.

¶ 2 The substance of the argument contained in the brief of Employer and Insurance Carrier concerning the propriety of the workers' compensation trial court considering a claimant's loss of earning power is as follows:

The accidental injury at issue involves Claimant's back. The back is not a scheduled member of the body under the Workers' Compensation Act, and a back injury which potentially results in disability falls within the "other cases" clause of the Act and must be computed on the basis of disability to the body as a whole. *Ada Iron & Metal Works v. Tarpley*, 396 P.2d 508 (Okla.1965[1964]). To sustain an award for permanent partial disability under the classification "other cases", an employee must be partially disabled as a result of the compensable injury *and* must have sustained a decreased earning capacity. *Murch Bros. Const. Co. v. Cupp*, [177 Okla. 102] 57 P.2d 852 (Okla.1936). It is true that an employee who actually receives more wages after a compensable injury than he received prior to the accident may nevertheless have sustained a loss of earning capacity for which he should receive compensation *Evans–Wallower Zinc v. Hunt*, [195 Okla. 518] 159 P.2d 720 (Okla.1945). However, the decrease in an injured employee's wage earning capacity resulting from an injury and any resulting permanent partial disability is a fact question for the Workers' Compensation Court, and can be determined by ascertaining how much ability to earn wages at manual labor has been decreased by the physical impairment present. *Mayo Hotel Co. v. Barney*, [185 Okla. 609] 95 P.2d 627 (Okla.1939).

* * *

The compensation which may be awarded to an injured worker for permanent partial disability is determined by how much the worker's ability to earn wages has been reduced by reason of the injury. *Cornhusker Theaters [Theatres] v. Foster*, [181 Okla. 341] 74 P.2d 109 (Okla.1938). While the Trial Court is not bound to accept wages earned subsequent to the date of injury as the sole basis for determining if there has been a decrease in the worker's wage-earning capacity, the Court may consider this evidence. *Southwestern States Telephone Co. v. State Industrial Commission*, [181 Okla. 533] 75 P.2d 468 (Okla.1938). The wage earning capacity of an injured worker is determined by a consideration of all the testimony, facts, and circumstances, including proof as to the degree of employee's disability, offered at trial. *Moore v. State Industrial Commission*, [170 Okla. 9] 38 P.2d [577]587 (Okla. 1934).

¶ 3 The chief problem with this argument by Employer and Insurance Carrier is that all of the cases cited by them, except *Ada Iron & Metal Works v. Tarpley*, 1964 OK 227, 396 P.2d 508, involve disability claims that arose prior to the amendment of the Workers' Compensation Act in 1941. As Justice Opala points out in his concurring opinion in *Crocker v. Crocker*, 1991 OK 130, ¶ 2, 824 P.2d 1117, 1125–26 (footnotes omitted), the "1941 amendment eliminated the need to establish loss of earning power in order to receive compensation for permanent partial disability." (The *Ada Iron & Metal Works* case did not involve any issue concerning the loss of earning power.)

¶ 4 The majority opinion in *Crocker v. Crocker* does observe that "[t]he basic theory of workers' compensation has remained the same [since its inception]—that the benefits received relate to the loss of earning capacity and not to an employee's physical disability." However, the issue in *Crocker* was whether a workers' compensation award was a divisible marital asset upon divorce. *Id.* at ¶ 13, 824 P.2d at 1121.

¶ 5 The court's recognition that "[a]wards continue to be based on compensation in lieu

of wages" may have correctly identified an award's most important characteristic for matrimonial property purposes, but it does not reflect the current statutory status of permanent partial disability. *Id.* Again, the concurring opinion Justice Opala provides that guidance:

> When the present version of the Workers' Compensation Act was enacted in 1977, *two* distinct definitions of disability were introduced—one for permanent total disability and another for permanent *partial* disability. A permanently and totally disabled worker is one who *lacks the capacity to earn any wages and is hence eligible for wage replacement.* Permanent partial disability, on the other hand, means *permanent impairment.* "Permanent impairment" is defined as *"any anatomical or functional abnormality or loss* after reasonable medical treatment has been achieved, which abnormality or loss the physician considers to be capable of being evaluated at the time the rating is made. * * * " (Emphasis added.) This definition "not only abandons the old theory of ordinary manual or mechanical labor, but also sets up a new and more specific means of evaluating permanent partial disability by directly equating it to permanent impairment." (Emphasis added.) "Impairment" clearly stands for loss of physical function. Permanent partial disability benefits provide recompense *for the workers' lost corporal function and not for foregone income.*

> \* \* \*

> As distinguished from all other payout classes, *permanent partial disability* contemplates *recompense for lost physical fitness,* though the amount paid the worker is measured by a percentage of wages he (or she) would have earned but for the covered injury.

*Id.* at ¶¶ 3, 4, 824 P.2d at 1126–27 (footnotes omitted).

¶ 6 The supreme court appears to have adopted the view of Justice Opala in a case on review from the workers' compensation court. In *TRW/REDA Pump v. Brewington,*

1992 OK 31, ¶ 26, 829 P.2d 15, 26, the court stated:

> Our law allows recovery for an anatomical abnormality or loss, or functional abnormality or loss, both of which were shown here. 85 O.S.Supp.1988, § 3(11) [now 85 O.S.Supp.1990, § 3(11) ]. In defining permanent impairment § 3(11) says it is, "any anatomical or functional abnormality or loss after reasonable medical treatment has been achieved, which abnormality or loss the physician considers to be capable of being evaluated at the time the rating is made." TRW wholly ignores the § 3(11) definition of permanent impairment in its appeal to this Court.

¶ 7 Employer and Insurance Carrier alternatively contend that competent medical evidence supports the trial court's determination of zero percent permanent partial disability, even if there is some error in the trial court considering the loss of earning power. The chief problem that this court has in reaching that conclusion is that it is not clear whether the trial court awarded no permanent partial disability because he found no permanent partial disability under the medical evidence, or whether the court was ruling that Claimant was entitled to no compensable disability because he suffered no loss of earning power, regardless of any medical disability impairment.

¶ 8 An appellate court "must know what a decision means before the duty becomes [the court's] to say whether it is right or wrong." *Fischbach & Moore of Texas v. State Ind. Comm.,* 201 Okla. 170, 203 P.2d 422, 425 (1949) (citation omitted). The instant case is much like *Moten v. Chandler Well Service,* 1961 OK 125, ¶ 11, 363 P.2d 153, 154, where the court was "unable to determine from the order whether it was the intention to find that claimant did not sustain any disability from the [injury] or whether it was the intention to find that [claimant] sustained a disability from the [injury] but that the disability was not compensable." Where the appellate court is "unable to determine whether the order was based on law or fact the order is not subject to judicial interpretation." *Id.* at ¶ 12, 363 P.2d at 154 (citation omitted). "Where the findings of fact and

conclusions of law of the [workers' compensation tribunal] are too indefinite and uncertain for judicial interpretation, [the reviewing appellate court] will vacate the order for further proceedings." *Id.* (syllabus).

¶9 VACATED AND REMANDED FOR FURTHER PROCEEDINGS.

BOUDREAU, V.C.J., and STUBBLEFIELD, P.J., concur.